1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12
13  JOHN JUNGERS,

14                              Plaintiff,

15  v.

16  CITY OF SAN DIEGO, et al.,

17                              Defendants

18
19

Case No.:  21-cv-0829 W (MSB)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOC. 6] WITHOUT LEAVE TO AMEND**

20          Pending before the Court is Defendant County of San Diego's motion to dismiss

21  the Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff John Jungers

22  opposes the motion.

23          The Court decides the matter on the papers submitted and without oral argument.

24  See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS** the motion to

25  dismiss [Doc. 6] **WITHOUT LEAVE TO AMEND**.

26
27
28

1

1   I.   **BACKGROUND**

2          According to the Complaint, on January 20, 2020, at approximately 7:30 p.m., an

3   unknown bystander called 911 claiming that Plaintiff John Jungers was grabbing a

4   woman by the arm.  (*Compl.* [Doc. 1] ¶ 2.)  Approximately twenty-two minutes later,

5   Defendant Police Officers Fernando F. Rincon, Jr. and Brooks R. Noble responded to the

6   "kidnapping in progress call."  (*Compl.* ¶¶ 2, 3.)  According to the police report, the

7   officers found Jungers walking alone on Sunset Cliffs Boulevard, "yelling at himself

8   while flailing his arms in the air" and appeared he "incoherent."  (*Id.* ¶ 4.)

9          The officers approached Jungers and told him to stop walking.  (*Compl.* ¶ 5.)

10  Jungers complied "by turning around and raising his hands in the air."  (*Id.*)  Jungers

11  alleges that while he held his hands in the air, the officers shouted obscenities at him, so

12  Jungers stepped back to defuse the hostile situation.  (*Id.*)  The officers told Jungers to

13  stop backing away or he would be tased.  (*Id.* ¶ 6.)  "Less than two seconds later, without

14  considering de-escalation tactics, crisis training, mental health intervention, or other

15  reasonable alternatives, Defendant Rincon tased Mr. Jungers in the face."  (*Id.* ¶ 7.)  The

16  officers then tackled Jungers slamming his head on the asphalt, and proceeded to punch

17  and strike him with their knees in the head and upper torso.  (*Id.* ¶ 8.)  The officers then

18  handcuffed Jungers and incorrectly applied a WRAP device, which tightened the

19  handcuffs to the point where the circulation in Jungers' right hand was cut-off.  (*Id.* ¶ 9.)

20         Jungers was arrested for domestic violence and resisting arrest, and was

21  transported to UCSD's emergency room ("ER") for medical clearance.  (*Compl.* ¶ 10.)

22  Jungers sustained a concussion and required three stiches to his lip.  (*Id.* ¶ 11.)  The ER

23  doctor also ordered that Jungers be evaluated by a neurologist within the week because of

24  the blows to his head.  (*Id.*)  Jungers was then discharged from UCSD and booked at

25  Central Jail.  (*Id.* ¶ 12.)

26         Jungers alleges that while in the custody of Defendant San Diego County, he

27  requested medical care from unidentified deputies and nurses "almost daily for the

28  injuries he sustained during the incident, particularly the spasms, blurry vision, and

neurology referral." (*Compl.* ¶ 12.)  Despite his "constant pleas, and several jail grievance requests, for medical intervention, Mr. Jungers was denied any medical attention.  In fact, he was denied medical care over a dozen times." (*Id.* ¶ 13.)  As a result, Jungers continues to experience nerve damage in his face and hands, blurry vision, memory loss, and headaches.  (*Id.* ¶ 14.)  He also continues to suffer from sharp pains in his neck, spine, knees, and shoulders resulting from the incorrect application of the WRAP device, coupled with the prolonged period Jungers was restrained.  (*Id.*)

On April 28, 2021, Jungers filed this lawsuit against Defendant City of San Diego and Officers Rincon and Noble (collectively, the "City Defendants"), as well as San Diego County (the "County") and Doe Defendant Sheriff's Deputies and Sheriff's Nurses. (*See Compl.*[1])  The County now moves to dismiss the Complaint.

## II.   LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has

---

[1] On November 2, 2021, Jungers and the City Defendants filed a joint motion to dismiss the City Defendants.  (*See Jt. Mot. to Dismiss* [Doc. 18].)  On November 15, 2021, this Court granted the motion. (*See Dismissal Order* [Doc. 19].)

3

interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

## III.   DISCUSSION

Jungers alleges that while in County custody, certain unidentified deputies and nurses failed to summon medical care, and the County is liable under California Government Code § 815.2(a) for the tortious conduct of its employees.  (*Compl.* ¶¶ 72, 73.)  Jungers also contends the County is liable for its employees' failure to summon medical care under California Government Code § 845.6.  (*Id.* ¶ 74.)  The County argues that under the facts pled, it and its employees are immune from liability.  (*P&A* [Doc. 6-1] 1:27–28, citing Cal. Gov't Code § 854.6.)

### A.     Jungers has failed to state a claim against the County.

Under California's statutory scheme, "all government tort liability must be based on statute."  Cochran v. Herzog Engraving Co., 155 Cal.App.3d 405, 409 (1984) (citing Duarte v. City of San Jose, 100 Cal.App.3d 648, 653 (1980)).  California Government Code § 815 "abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution." Id.  Thus, "sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute."  Id.

4

With respect to injuries to prisoners, Government Code § 844.6(a)(2) "establishes the State's immunity to liability…." Castaneda v. Dep't of Corrections & Rehab., 212 Cal.App.4th 1051, 1070 (2013). This section provides, in relevant part:

> (a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6 . . . a public entity is not liable for: [¶] (2) An injury to any prisoner.

Section 844.6's immunity is then reaffirmed in section 845.6, which also creates a narrow exception:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856 [concerning mental illness and addiction], a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Id. This section, therefore, creates out of the general immunity for injuries to prisoners, "a limited cause of action against a public entity for its employees' failure to summon immediate medical care only." Castaneda, 212 Cal.App.4th at 1070 (citation omitted).

Here, in support of the failure-to-summon-medical-care claim, Jungers alleges the following:

> 12.   … While in the custody and care of Defendant County of San Diego, Mr. Jungers requested medical care from DOE Defendant Deputies and DOE Defendant Nurses almost daily for the injuries he sustained during the incident, particularly the spasms, blurry vision, and neurology referral.
>
> * * *
>
> 72.   COUNTY DOE Defendant Deputies and Nurses were negligent in their failure to summon medical care for Mr. Jungers despite his constant pleas. COUNTY DOE Defendant Deputies and Nurses knew that Mr. Jungers was suffering from blurry vision, headaches, and body spasms. Mr. Jungers informed DOE Defendant Deputies and Nurses that he was assaulted by police officers and that he needed to be evaluated by a

5

1
2

> neurologist, as ordered by the ER doctor. Mr. Jungers requested medical
> care from DOE Defendant Deputies and Nurses almost daily. Each plea
> went ignored.

3

4  (*Compl.* ¶¶ 12, 72.)  The County contends these allegations bar Junger's claim because he

5  "admits to speaking with nurses about his symptoms and medical care."  (*P&A* [Doc. 6-1]

6  2:21–22, 4:20–5:1.)   In his opposition, Jungers does not dispute that he spoke to nurses,

7  but instead argues there is no authority for the "novel contention that merely uttering

8  words to a nurse, without receiving a response, equates to providing medical care."

9  (*Opp'n* [Doc. 9] 7:8–10.)  The Court agrees with the County.

10        In <u>Nelson v. State of California</u>, 139 Cal.App.3d 72 (1982), the California Court

11  of Appeal explained the scope of the duty under section 845.6 to summon medical care.

12  According to the court,

13
14
15
16
17
18

> [o]nce a practitioner has been summoned to examine and treat a prisoner, he
> or she is under a duty to exercise that degree of diligence, care, and skill
> such as is ordinarily possessed by other members of the profession.  Failure
> to do so is malpractice.  (<u>Burns v. American Casualty Co.</u>, 127 Cal.App.2d
> 198, 203.)  Failure of a practitioner to prescribe or provide necessary
> medication or treatment to one he or she has been summoned to assist is a
> breach of such duty and as such is also medical malpractice and clearly, as a
> matter of the plain meaning of the statutory language, cannot be
> characterized as a failure to summon medical care.

19

20  <u>Id.</u> at 81.  In <u>Watson v. State of California</u>, 21 Cal.App.4th 836 (1993), the Court of

21  Appeal reaffirmed that section 845.6's duty to summon medical care does not encompass

22  the duty to *provide* reasonable medical care (<u>id.</u> at 841), and further rejected plaintiff's

23  contention that the statute imposes a duty to assure that prison medical staff properly

24  diagnose and treat the medical condition (<u>id.</u> at 842), or a duty to monitor the quality of

25  care provided (<u>id.</u> at 843).  Under these cases, a public entity satisfies its duty under

26  section 845.6 once a prisoner is seen by a medical practioner about his or her medical

27  condition.

28

The only reasonable inference to be drawn from the allegations in Junger's Complaint is that he was seen by a nurse (or nurses) on more than one occasion and informed them about his symptoms and the ER doctor's order for a follow-up neurological consult.  It is also reasonable to infer that after Jungers' explained his condition, the nurses failed to provide any treatment and did not provide a follow-up neurological exam.  Under Nelson and Watson, Jungers may have a medical malpractice claim against the individual nurses, but he does not have a failure to summon medical attention claim against the County or its employees.

Jungers nevertheless argues the County is vicariously liable for its employees' negligence under section 815.2.  (*Opp'n* 5:1–6:9.)  In support of this argument he cites M.B. v. Cal. Dep't of Corr. & Rehab., 2018 WL 4050743 (E.D. Cal. Aug. 23, 2018), which acknowledged that "[u]nder the doctrine of *respondeat superior*, an employer may be held vicariously liable for torts committed by an employee within the scope of employment" and that section 815.2 provides, "unless the employee is immune from liability, public entities are liable for injury proximately caused by an act or omission of an employee…." (*Id.* 5:10–22.)  Jungers' reliance on the case is misplaced.

The language Junger's quotes from M.B. specifically recognized respondeat-superior liability under section 815.2 applies "unless the employee is immune from liability…." M.B., 2018 WL 4050743, * 9.  The problem with Jungers' argument is that "[t]he first clause of section 845.6 establishes the immunity generally of both the public entity *and its employees* from liability 'for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." Castaneda, 212 Cal.App.4th at 1070 (emphasis added).  Because public employees are immune for failing to summon medical care—except as provided in section 845.6—section 815.2 does not apply.  This conclusion is supported by the Court of Appeal's decision in M.B., which—after acknowledging respondeat-superior liability under section 815.2—evaluated plaintiff's failure to summon medical care claim under section 845.6, not section 815.2: "because plaintiffs have sufficiently alleged a section 845.6 claim against an employee of

7

CDCR, plaintiffs have sufficiently alleged a section 845.6 claim against CDCR." <u>Id.</u> 2018 WL 4050743, *9.[2]  Thus, <u>M.B.</u> does not support Jungers' contention that section 815.2 provides a separate avenue for suing the County for failing to summon or provide medical attention.

### B.   <u>Leave to Amend.</u>

"If a court determines that a complaint should be dismissed, it should give leave to amend unless 'the pleading could not possibly be cured by the allegation of other facts.'" <u>Bailey v. Rite Aid Corp.</u>, 2019 WL 4260394, *3 (N.D. Cal. Sept. 9, 2019) (quoting <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990)).

Here, Jungers has requested leave to amend.  However, as discussed above, his admission that he was seen by nurses and described his symptoms bars his claim for failing to summon medical care.  Accordingly, the Court finds leave to amend could not be cured by the allegation of other facts.

### IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss [Doc. 6] **WITHOUT LEAVE TO AMEND**.

//

//

//

---

[2] On reconsideration, the court again found plaintiff's failure to summon medical care claim was dismissed under section 845.6 against the individual defendants and CDCR: "Accordingly, the court will grant defendants' motion to dismiss plaintiffs' failure to summon medical care under section 845.6 against all the individual defendants. [¶] … The Fifth Cause of Action against CDCR is DISMISSED WITHOUT PREJUDICE."  <u>M.B. III v. Cal. Dep't of Corr. & Rehab.</u>, 2018 WL 5024093, *6 (E.D. Cal. Oct. 16, 2018).

8

1    Because the Complaint names Doe Sheriff's Deputies and Doe Sheriff's Nurses as

2    defendants, this order does not close the case.

3    **IT IS SO ORDERED.**

4    Dated:  December 22, 2021

5

6    _____
     Hon. Thomas J. Whelan
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9